# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RACHEL NELSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-18-849-STE |
| ) | |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES AND REMANDS** the Commissioner's decision.

## I. PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration denied Plaintiff's application for benefits. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 18-29). The Appeals Council denied Plaintiff's request for

review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 21, 2016, her application date. (TR. 20). At step two, the ALJ determined that Ms. Nelson had the following severe impairments: affective disorder; anxiety disorder; and borderline intellectual functioning. (TR. 20). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 20).

At step four, the ALJ concluded that Ms. Nelson retained the residual functional capacity (RFC) to:

> [Perform] a full range of work at all exertional levels but with the following nonexertional limitations: limited to perform simple, routine and repetitive tasks and occasional contact with the public.

(TR. 22). At the administrative hearing, the ALJ questioned Ms. Nelson and a vocational expert (VE) to assess Plaintiff's past relevant work. (TR. 41-42, 53-54). In doing so, the VE testified that an individual with Ms. Nelson's RFC was capable of performing her past work as a housekeeper, as that job is generally performed in the national economy. (TR. 54). Thus, at step four, the ALJ concluded that Ms. Nelson was not disabled based on her

ability to perform this past job. (TR. 27). Even so, the ALJ made alternate findings at step five.

At step five, the ALJ presented the RFC limitations to the VE to determine whether there were other jobs in the national economy that Plaintiff could perform. (TR. 54-55). Given the limitations, the VE identified three jobs from the Dictionary of Occupational Titles. (TR. 55). The ALJ adopted the testimony of the VE and concluded that Ms. Nelson was also not disabled at step five based on her ability to perform the identified jobs. (TR. 28).

## III. STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). Under the "substantial evidence" standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence … is more than a mere scintilla … and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

**IV. ISSUES PRESENTED**

On appeal, Ms. Nelson alleges the ALJ erred in evaluating: (1) the medical evidence and (2) Plaintiff's subjective allegations.

**V. NO ERROR IN THE CONSIDERATION OF THE MEDICAL EVIDENCE**

Ms. Nelson alleges error in the ALJ's consideration of certain medical evidence. (ECF No. 16:8-11). Specifically, Plaintiff contends that the ALJ erred in failing to give more weight to the opinion of a treating physician, Dr. Charles Shields, over the opinions of two non-examining State Agency physicians. (ECF No. 16:8-11). The Court finds no merit in this allegation of error.

### A. The ALJ's Duties in Evaluating Medical Opinions

Regardless of its source, the ALJ has a duty to evaluate every medical opinion in the record. *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004); 20 C.F.R. § 416.927(c). The weight given each opinion will vary according to the relationship between the claimant and the medical professional. *Hamlin*, 365 F.3d at 1215. For example, in evaluating a treating physician's opinion, the ALJ must follow a two-pronged analysis. First, the ALJ must determine, then explain, whether the opinion is entitled to controlling weight. *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004).

This analysis, in turn, consists of two phases. First, an ALJ must consider whether the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and consistent with other substantial evidence in the record. Policy Interpretation Ruling Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions, 1996 WL 374188, at 2 (July 2, 1996) (internal quotations omitted). If

controlling weight is declined, the ALJ must assess the opinion under a series of factors which are considered when assessing *any* medical opinion, regardless of its source. These factors include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) the consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Krausner v. Astrue,* 638 F.3d 1324, 1330 (10th Cir. 2011); 20 C.F.R § 416.927(c).

Although the ALJ need not explicitly discuss each factor, the reasons stated must be "sufficiently specific" to permit meaningful appellate review. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). If the ALJ rejects an opinion completely, he must give "specific, legitimate reasons" for doing so. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal citations omitted).

Opinions of physicians who have seen a claimant over a period of time for purposes of treatment are generally given more weight over the views of consulting physicians or those who only review the medical records and never examine the claimant. *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). Error is only found when an ALJ rejects an opinion from a treating physician in favor of a non-examining physician "absent a legally sufficient reason for doing so." *Id.*

### B. Opinions from Dr. Shields and Non-Examining State Agency Physicians

The medical record contains two letters authored by Dr. Charles Shields which document findings regarding Plaintiff's physical abilities following two examinations. (TR. 448-451). In a letter dated April 14, 2015, Dr. Shields: (1) noted that Plaintiff had complained of lower back and left knee pain since 2009 and (2) ordered x-rays. (TR. 450).[1] In a letter dated May 6, 2015, Dr. Shields noted that based on the x-rays, Plaintiff should:

- only "occasionally" lift 35 pounds from the knee level and 20 pounds from the floor;

- only "rarely" bend and/or twist;

- be limited to pushing and/or pulling 35 pounds;

- avoid long walking;

- only "occasionally" climb one flight of stairs and "rarely" climb two flights; and

- avoid ladder climbing beyond four feet.

(TR. 448).

At the initial and reconsideration levels of the disability determination, two State Agency physicians reviewed Plaintiff's records, including the evidence from Dr Shields, and stated: "clt is not severely limited by back pain.; [radiology] does not support a severe physical [medically determinable impairment]. Physical is nonsevere." (TR. 185, 203).

---

[1] Dr. Shields also noted that Plaintiff complained of pain in her bilateral neck, left shoulder, and left ankle, along with some arthritic changes in her inner knuckles, but that Ms. Nelson stated that none of those complaints would interfere with her ability to work. (TR. 450).

The ALJ summarized the records from Dr. Shields,[2] but ultimately rejected his findings. (TR. 25).[3] In doing so, the ALJ provided three reasons:

1. Dr. Shields had only examined Plaintiff on two occasions;

2. Dr. Shields' opinion was not consistent with the record as a whole; and

3. Dr. Shields' opinion regarding the "potential development" of arthritic changes did not support the limitations imposed at that time.

(TR. 25). In turn, the ALJ adopted the opinions from two State Agency physicians, according those opinions "great weight," relying specifically on the fact that both physicians had noted that Plaintiff's physical impairments "were not as severe as x-rays noted mild degenerative disk and joint disease at multiple levels as well as grade 1 anterolisthesis of L5 and S1." (TR. 26).

### C. Plaintiff's Arguments

Ms. Nelson argues that the ALJ "did not weigh the competing opinions from … Dr. Shields, and the State agency medical consultant under the correct legal standards[.]" (ECF No. 16:11). According to Plaintiff, the ALJ erred by: (1) failing to weigh Dr. Shields' opinion utilizing the various regulatory factors;[4] (2) giving more weight to the opinions from the State Agency physicians; and (3) failing to provide specific reasons to reject Dr. Shields' opinion. (ECF No. 16:10-11). The Court rejects these arguments.

---

[2] (TR. 26).

[3] The ALJ accorded Dr. Shields' opinion "little" weight, which is tantamount to rejection of the opinions. *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012).

[4] *See supra*.

### 1. The ALJ Utilized the Regulatory Factors in Weighing Dr. Shields' Opinion

The regulatory factors that the ALJ was required to utilize when examining Dr. Shields' opinion included: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) the consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Krausner v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011); 20 C.F.R § 416.927(c).

As stated, the ALJ rejected Dr. Shields' opinion because:

1. Dr. Shields had only examined Plaintiff on two occasions;

2. Dr. Shields' opinion was not consistent with the record as a whole; and

3. Dr. Shield's opinion regarding the "potential development" of arthritic changes did not support the limitations imposed at that time.

(TR. 25). In rejecting Dr. Shields' opinion, the ALJ clearly considered the first, fourth and sixth regulatory factors listed above. "That the ALJ did not explicitly discuss all the § 4[16.9]27(d) factors for each of the medical opinions before him does not prevent this court from according his decision meaningful review." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). Thus, the Court rejects Ms. Nelson's argument that "[n]othing in the ALJ's decision indicates he considered the applicable factors when weighing Dr. Shields' opinion." (ECF No. 16:11).

8

## 2. The ALJ did not Err in Giving More Weight to Opinions from the State Agency Physicians

Plaintiff presents two arguments regarding how the ALJ erred in giving greater weight to the opinions from the State Agency physicians over the opinion from Dr. Shields. (ECF No. 16:11). Neither argument has merit.

First, Ms. Nelson states that "[a]n ALJ can only rely on the opinions from State agency [physicians] if their opinions have adequate support from the medical evidence." (ECF No. 16:10-11). This language suggests that Ms. Nelson believes that the State Agency physicians' opinions did *not* have adequate support from the medical evidence. But such a conclusion is belied by the record. Outside of the opinions from the State Agency physicians and Dr. Shields, the record contained only one relevant source of evidence pertaining to Ms. Nelson's physical health—a record documenting a consultative examination which occurred on June 25, 2016. (TR. 441-446). There, the consultative examiner (CE) noted that Ms. Nelson complained of pain in multiple joints and muscles, mainly centered in the low back, both knees with left knee pain greater than right, and pain in her left shoulder. (TR. 442). Even so, the CE found that Plaintiff's musculoskeletal findings and range of motion were within normal limits. (TR. 442-446). The State Agency physicians summarized the findings from the CE to conclude that Ms. Nelson had no severe physical impairment. Thus, the Court concludes that the State Agency physicians' opinions, which were based in large part on the findings from the CE, "have adequate support from the medical evidence"—the very basis on which Plaintiff herself concedes allows the ALJ to rely on such opinions. *See* ECF No. 16:10-11.

Second, Plaintiff argues that the ALJ erred in according more weight to the State Agency physicians' opinions because the ALJ failed to examine and weigh those opinions against Dr. Shields' opinion. Plaintiff argues:

> Here, the ALJ did not weigh the competing opinions from … Dr. Shields, and the State agency medical consultant under the correct legal standards—giving the greater deference to Dr. Shields. Instead, the ALJ gave the greater deference to the opinions of the State agency consultants, using their interpretation of the evidence as the basis for rejecting Dr. Shields' opinion.

(ECF No. 16:11). In presenting this argument, it appears that Plaintiff is asserting the oft-cited rule of law which states: "When a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports to see if they outweigh the treating physician's report, not the other way around." *Goatcher v. United States Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995) (quotation omitted). Here, the ALJ examined and weighed the only three sources of evidence regarding Plaintiff's physical health—one from an examining CE, one from non-examining physicians and a third from Dr. Shields. (TR. 23, 25, 26). In doing so, the ALJ ultimately found that the opinions from the CE and the State Agency physicians had outweighed the opinion from Dr. Shields. Thus, the Court finds that the ALJ fulfilled his duty under *Goatcher*. This Court will not re-weigh the evidence to reach a contrary conclusion. *See Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (noting that the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency.") (internal quotation marks omitted).

### 3. The ALJ Provided Specific Reasons to Reject Dr. Shields' Opinion

Finally, Plaintiff argues that "the ALJ's findings are not sufficiently specific to make clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reason for that weight." (ECF No. 16:11) (internal quotation marks and citation omitted; alteration in original). The Court disagrees.

As stated, the ALJ rejected Dr. Shields' opinion because:

1. Dr. Shields had only examined Plaintiff on two occasions;

2. Dr. Shields' opinion was not consistent with the record as a whole; and

3. Dr. Shields' opinion regarding the "potential development" of arthritic changes did not support the limitations imposed at that time.

(TR. 25). These reasons are "sufficiently specific" to make clear to the Court why the ALJ had rejected Dr. Shields' opinion.

## VI. ERROR IN THE CONSIDERATION OF PLAINTIFF'S SUBJECTIVE ALLEGATIONS

Ms. Nelson alleges that the ALJ committed legal error in evaluating her subjective allegations. (ECF No. 16:12-15). The Court agrees.

### A. ALJ's Duty to Evaluate Plaintiff's Subjective Allegations

Social Security Ruling 16-3p provides a two-step framework for the ALJ to consider a claimant's symptoms and determine the extent to which the symptoms are consistent with the evidence in the record. SSR 16-3p, 2016 WL 1119029, at *2 (Mar. 16, 2016). First, the ALJ must make a threshold determination regarding "whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id.*, at *2.

11

Second, the ALJ will evaluate the intensity and persistence of the claimant's symptoms to determine the extent to which they limit an individual's ability to perform work-related activities. *Id.* At step two, the ALJ will examine the objective medical evidence, the claimant's statements regarding her symptoms, information from medical sources, and "any other relevant evidence" in the record. *Id.*, at *4. SSR 16-3p also directs the ALJ to consider the following seven factors in evaluating the intensity, persistence, and limiting effects of the claimant's symptoms:

- Daily activities;
- The location, duration, frequency, and intensity of pain or other symptoms;
- Factors that precipitate and aggravate the symptoms;
- The type, dosage, effectiveness, and side effects of any medication;
- Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
- Any measures other than treatment a claimant has used to relieve pain or other symptoms; and
- Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id.*, at *7. Finally, in evaluating a claimant's subjective statements, the ALJ must "provide specific reasons for the weight given to the [claimant's] symptoms, [which are] consistent with and supported by the evidence, and [ ] clearly articulated" for purposes of any subsequent review. *Id.*, at *9.

### B. Error in the ALJ's Consideration of Plaintiff's Subjective Allegations

In formulating the RFC, the ALJ stated that he had considered Ms. Nelson's subjective allegations. (TR. 22). The ALJ then: (1) set forth the two-step framework under SSR 16-3p, (2) summarized the medical evidence, and stated:

> [T]he claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(TR. 24). The ALJ then summarized Plaintiff's testimony and proceeded to weigh the opinion evidence. (TR. 24-27). Although the ALJ had stated that Ms. Nelson's statements "[we]re not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision," the Court cannot perceive from the decision, that the ALJ ever weighed Plaintiff's testimony or explained why he had discounted it. *See* TR. 22, 24-25.

The ALJ's recitation of the proper standard and his summary of Plaintiff's testimony is insufficient to fulfill his duties under SSR 16-3p. Although the ALJ summarized Plaintiff's testimony, he did not thereafter: (1) explain which portions of it he did not believe, (2) "closely and affirmatively" link any of the factors to his determination, or (3) provide specific reasons for that determination. *See* TR. 25-26; *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (explaining that ALJ is required to closely and affirmatively link credibility findings to substantial evidence in the record and to "articulate specific reasons" for such findings). Instead, the ALJ simply recited evidence from the record and did not provide any insight into how that evidence had impacted his determination of Plaintiff's

allegations. Such conclusory findings are insufficient. *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) ("[T]he link between the evidence and credibility determination is missing; all we have is the ALJ's conclusion."). As a result, remand is warranted.

## ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **REVERSES AND REMANDS** the Commissioner's decision.

ENTERED on May 31, 2019.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE